IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JON SPENGLER, | : | |
| Plaintiff, | : | CASE NO. 2:05-cv-977 |
| v. | : | JUDGE MARBLEY |
| WORTHINGTON CYLINDERS, | : | MAGISTRATE JUDGE KEMP |
| Defendant. | : | |

**PLAINTIFF JON SPENGLER'S TRIAL BRIEF**

**I. Introduction.**

    **A. General factual basis of the claim.**

As established by the summary judgment pleadings, as well as the proposed jury instructions of both parties, the sole claim in this case is that Plaintiff Jon Spengler ("Spengler") was discharged from his position as a Seasonal Employee at Worthington Cylinders ("WC") because he had made a good faith complaint regarding age discrimination.  Initially, Spengler had been recommended for, but denied, promotion to regular full-time status ("RFT"), and had then approached supervisor Michael Huggins ("Huggins") to inquire what he might do to attain that status in the future.  During this discussion, Huggins made certain comments that reasonably led Spengler to believe that his age (53) might be a factor in his being denied RFT status.  He took these concerns to Huggins' supervisor John Hoffman, who stated he would look into the issue.

Immediately after Spengler made his complaints known to Hoffman, Huggins began treating Spengler far differently, basically trying to avoid him, giving him dirty looks, and refusing to speak to him.  When the next RFT opportunities became available , and Spengler was

again chosen for possible promotion, Spengler was removed from consideration by Huggins before the final decisions were even made. A few weeks later, Spengler was called in to Huggins' office and discharged without warning. Huggins alleged at that time that he had heard certain comments about Spengler that led him to discharge him. At no time was the fact that Spengler missed RFT status after being considered twice mentioned as a possible reason for discharge. Even though Huggins had previously stated he would recommend Spengler for Worthington Steel, he now stated that he would not do so.

Spengler is not claiming that he should have been given RFT status by WC. Spengler is not claiming that any of the times he was recommended for RFT status but failed to attain such status were necessarily discriminatory in nature. Spengler is not claiming damages based on an RFT pay rate, but only on his pay rate as a seasonal employee.

**B. Undisputed facts pertinent to this Brief.**

The following facts were established in sworn deposition testimony:

1. Huggins was the sole decision maker who discharged Spengler;

2. Huggins has stated in deposition that the sole reason he discharged Spengler was the alleged comments of co-workers that painted Spengler as "not a team player;"

3. To be recommended for RFT status meant that Spengler, at the time each of the processes occurred, was considered by his floor supervisor one of the "best of the best" seasonal employees (i.e. in the top 15% in performance);

4. There was no policy that states that seasonal employees who were twice considered for RFT status and failed to attain RFT status were to be discharged;

5. Seasonal employees generally were not discharged unless they either (a) were put through the regular disciplinary process; or, (b) there was a slow down in work;

6. Spengler received no discipline of any kind, in fact receiving very positive reviews and consideration for RFT status as one of the "best of the best;" and,

7. There was no slow down during, or at the end of, Spengler's employment with WC.

**II. Expected evidentiary issues.**

    **A. WC will attempt to introduce irrelevant details of why Spengler failed to attain RFT status.**

The following are the elements of a retaliation claim:

    (1) that Spengler engaged in a protected activity in making his complaints of age discrimination;

    (2) that WC was aware of Spengler's complaints of age discrimination;

    (3) that WC discharged Spengler; and,

    (4) that WC's decision to discharge Spengler was causally connected to Spengler's complaints of age discrimination.

In this case, elements (2) and (3) are a given. Elements (1) and (4) are the disputed elements in the case. The evidence regarding the RFT process is not "relevant evidence" as that is defined by Fed.R.Evid. 401, and therefore must be excluded pursuant to Fed.R.Evid. 402.

    **1. Examination of the RFT process itself is unnecessary for element (1).**

It is a given that Spengler complained about possible age discrimination, making the only consideration under element (1) being whether Spengler had a good faith reason for making his complaints. Such good faith reason need not mean that Spengler was correct, but only that he had some basis for his belief. <u>Johnson v. Univ. of Cincinnati</u>, 215 F.3d 561, 582 (6th Cir.2000). This element, then, does not require an examination of whether the RFT process was discriminatory, or not so. In fact, it was not the fact that he failed to attain RFT status that caused Spengler to complaint. It was the comments made by Huggins when he asked him for

3

advice as to how to attain RFT status the next time that caused the complaints.  Spengler never claimed to know how RFT was decided, or that the process itself was discriminatory.

### 2. An examination of the RFT process is unnecessary for element (4).

Element (4) deals only with the alleged reasons for discharge, Spengler's allegations of retaliation, and WC's alleged defenses.  For his part, Spengler does not allege that his failure to attain RFT status was any reason for his discharge, and he was not told that by anyone at WC.  For its part, WC asserts that Spengler was discharged from seasonal employee status solely because of allegations that he was not a "team player."  WC does not contend that Spengler's failure to attain RFT status had any bearing on the decision to discharge, nor any determination made in the first RFT process.  This means that the first RFT process is irrelevant past proving that Spengler was considered by his supervisors to be one of the "best of the best" seasonal employees.  After making his complaints, Spengler was again recommended by his immediate supervisor for RFT status as being one of the "best of the best," but removed from the list by Huggins before the process really got started.

While the fact that Spengler was considered for RFT status establishes that he was one of the "best of the best" seasonal employees, the reasons why Spengler failed to attain RFT status after being recommended are irrelevant.  In fact, such details can only be introduced to try and besmirch Spengler's character and performance in the eyes of the jury.  It is undisputed that Spengler was not disciplined nor counseled in any fashion during his employment.  Spengler does not allege as a claim in this case that the first RFT process was discriminatory, and need not prove that it was to prevail. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579-80 (6th Cir. 2000).  This makes any detailed examination of the first RFT process totally irrelevant, as it was

4

Huggins' comments *after* that process was finished that caused Spengler's complaints, not the process itself.

WC has included notes and documentation from the first and second RFT processes in its Exhibit List. Spengler will be introducing evidence that he was recommended for RFT status twice by his floor supervisor to prove that he was considered to be one of the "best of the best" seasonal employees. Past that, however, Spengler will object to the relevance of introduction of evidence detailing why WC determined that he would not attain RFT status after being recommended for such status. Such information has no relevance to why he did not remain a seasonal employee, which comprises the whole of Spengler's claim.

### B. WC must not be allowed to bring evidence implying that Spengler would have been discharged for failing to obtain RFT status a second time.

Spengler asserts that allowing evidence of apparently no more than coincidental terminations of seasonal employees after those employees were considered twice for RFT status would be, at the very least, more prejudical than probative, and would tend to confuse and/or mislead the jury, pursuant to Fed. R. Evid. 403. The presentation of such flimsy and unsupported evidence to establish a "policy" that in reality did not exist is an attempt by WC to create a "pseudo-<u>Desert Palace</u>' argument regarding damages. The <u>Desert Palace</u> formula is inapplicable to the instant case, and the presentation of such evidence, through any employee of WC, would be legally and factually inappropriate given prior sworn testimony of the sole discharge decision maker.

### 1. Any testimony on this subject will be misleading in nature.

WC has listed Amy Thompson ("Thompson") on its witness list, and suggests that Thompson will testify to "policies and practices" of WC, and authenticate human resources

5

records.  WC admits that Thompson was not employed by WC at the time that Spengler was employed, nor when he was discharged.  Therefore any testimony by Thompson regarding policies and practices at the time of Spengler's employment and discharge would, by necessity, be hearsay.  Thompson must, therefore, be barred from giving any such testimony.

As for "authenticating documents," the suggestion given by WC's Motion in Limine to Exclude Evidence of Lost Pay Damages, filed with the Court, suggests that Thompson will be used to "authenticate" a document created by WC for this case (the "summary" attached to the Motion in Limine that shows the names, RFT considerations dates, and termination dates of other employees who were considered for RFT twice), or possibly other documents that establish these coincidental terminations.  As pointed out in Spengler's Response in Opposition to the Motion in Limine, Thompson would be attempting to create an inference that is unsupported by any facts.  It is obviously WC's intention to use these "records" to *infer* (proof being absent) that Spengler would have been discharged for twice being considered for, and failing to attain, RFT status.

### 2. WC is attempting to create a mixed-motive analysis for purposes of damages, when this is not a mixed-motive case.

#### i. The Desert Palace formula for mixed-motive damages analysis.

Under the Desert Palace mixed-motive analysis, "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff."  42 U.S.C. § 2000e-5(g)(2)(B), *quoted in* Desert Palace, 539 U.S. at 94.  The plaintiff in a Desert Palace analysis may use circumstantial evidence to prove that an unlawful factor was one of many motivating the employment decision, but the restriction in remedies limits the plaintiff's damages to declaratory or injunctive relief that does not require admissions of liability,

"reinstatement, hiring, promotion, or payment," and attorneys' fees and costs.  Desert Palace, 539 U.S. at 91, fn2, *citing* 42 U.SC. § 2000e-5(g)(2)(B).  Desert Palace cases require that the alleged non-discriminatory reason for discharge that is part of the "mixed-motive" be proven sufficient in and of itself to have caused discharge.  Id.  While the Desert Palace decision reached only Title VII cases, age discrimination cases under Ohio law and the ADEA receive the same analysis as Title VII cases.  *See* Bolander v. BP Oil Co., 128 Fed. Appx 412, 415 (6th Cir. February 10, 2005); Hines v. Ohio State Univ., 3 F. Supp 2d 859, 873 (S.D.Ohio 1998).

### ii.  This case does not fit the Desert Palace formula.

The case at bar is not a Desert Palace case for several reasons, primarily because neither the plaintiff nor the defendant have ever pled that Spengler was terminated for any "mixed-motive."  Spengler's evidence supports his claim that he was fired in retaliation for complaining about age-related discrimination.  Huggins, the sole decision-maker, swore to one reason in his testimony, i.e. the "not as team player" comments he got from Spengler's co-workers.  This is not a "mixed-motive," but is solely an alternative non-discriminatory reason.  Neither party agrees that the other party's reasons were even partially valid.  Therefore, this case does not fit within the Desert Palace formula regarding mixed-motive.

### iii.  The jury would be misled as to the proper measure for damages if this evidence is allowed to be presented.

By presenting the alleged policy and the document that was prepared for trial to the jury, WC is attempting to make an end-run around Desert Palace.  WC will not admit overtly that they retaliated against Spengler because of his complaints of age discrmination.  However, the effect of their offered evidence, a list of seasonal workers who also no longer worked (not necessarily fired) at WC after being passed over for promotion twice, will be to create the inference that

7

even if they had an illegal motive in terminating him, his name would have ended up on that list anyways.  If the jury accepts this inference as true, the jury may feel it needs to reject Spengler's claim by applying a <u>Desert Palace</u>-type mixed-motive analysis, thereby reducing his damages severely.  This would be a great injustice considering that neither side has pled that this is a mixed-motive case.

**III.  Conclusion**

WC must not be allowed to turn this trial into either an exercise in character assassination, or a game of damages misdirection.  The evidence discussed above must be barred upon objection by Spengler's counsel.

Respectfully submitted,

s/ Nicholas E. Kennedy
Nicholas E. Kennedy (0070310)
Trial Attorney for Plaintiff
Gary A. Reeve (0064872)
Kennedy Reeve & Knoll
98 Hamilton Park
Columbus, Ohio  43203
(614) 228-2050

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Courts through the CM/ECF system which will send notification of such filing to Defendant's counsel via electronic mail.

s/ Nicholas E. Kennedy
Nicholas E. Kenned

8