**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JON SPENGLER,** : | |
| : | |
| **Plaintiff,** : | Case No. C2-05-977 |
| : | |
| v. : | **JUDGE ALGENON L. MARBLEY** |
| : | **Magistrate Judge Terence P. Kemp** |
| **WORTHINGTON CYLINDERS,** : | |
| : | |
| **Defendant.** : | |

**ORDER DISPOSING OF MOTIONS IN LIMINE**

The Court held a Final Pretrial Conference in this matter on November 30, 2007.  At the conference, the Court issued the following rulings on the parties' motions in limine:

1.  The Court **DENIES** Defendant Worthington Cylinders' ("WC") Motion to Exclude Evidence of Alleged Liquidated Damages (docket no. 40).

WC argues that the Court should preclude evidence of liquidated damages at trial because the evidence shows that WC terminated Spengler as a result of the negative appraisal of Spengler's co-workers, not in retaliation for Spengler's complaint about age discrimination.  As Spengler rightly points out, WC's argument ignores this Court's summary-judgment order, in which the Court held that there was sufficient evidence for a jury to find that WC's reason for terminating Spengler was not the true reason and that instead, WC unlawfully retaliated against Spengler.  If the jury finds for Spengler, it may further find that WC "willfully violated" the ADEA, and that Spengler is therefore entitled to liquidated damages.  If, after the close of all the evidence, Spengler has not adduced sufficient evidence of "willfullness," the Court may decline to give this issue to the jury.

2. The Court **DENIES** WC's Motion to Exclude Evidence of Wage Loss After February 9, 2005 (docket no. 44). As with WC's liquidated-damages motion, there is no basis for determining, prior to the presentation of all the evidence at trial, that Spengler should be prohibited from recovering lost wages after February 9, 2005.

February 9 is the date WC terminated Spengler. WC argues that seasonal employees who are considered and rejected for RFT status on two separate occasions are automatically terminated. WC says that Spengler was twice turned down for RFT status and that therefore his employment would have ended on February 9 no matter what. This argument is not supported by the record as it presently exists. WC did not adduce any evidence in support of its summary-judgment motion that WC has a policy of automatically terminating seasonal employees who fail to attain RFT status after two rounds of consideration. In fact, Spengler's supervisor testified at his deposition that WC did not have a written policy requiring termination of a seasonal employee twice rejected for RFT employment. WC's Human Resources Manager, Kelly Shroyer, testified that only an offense that is "serious enough" would warrant immediate termination, such as fighting on the job, dishonesty, stealing, and knowingly performing a job incorrectly. In addition, even if WC has such a policy, it is not clear that the policy would even apply to Spengler. At this stage, given WC's failure to develop the record, the Court is in no position to know what it means to say that a seasonal employee was twice considered and twice rejected for an RFT position. Although Spengler was twice nominated for RFT status, he was terminated *before* his second candidacy was rejected by WC.

Thus, the Court has no basis for concluding, prior to the presentation of evidence at trial, that Spengler cannot recover any damages for lost wages after February 9, 2005.

3. The Court **DENIES** Spengler's Motion to Preclude Use of WC's Witness at Trial (docket no. 49) on the condition that WC produce witness Amy Thompson for deposition prior to trial.

Spengler contends that Thompson should be prevented from testifying because during discovery, WC never mentioned her as a person having knowledge of any issue relevant to the case. WC responds that Thompson's name did not previously come up because she did not transfer to the WC Columbus plant until 2007. WC says that Thompson will testify about WC policies and practices regarding seasonal employees, non-discrimination, and non-retaliation, and that she will be called to authenticate documents that have been the subject of discovery.

The opportunity to depose Thompson prior to trial should eliminate any concerns Spengler may have about unfair surprise at trial. However, should Spengler conclude after deposing Thompson that there are still valid grounds for excluding her testimony at trial, he may renew his motion.

4. The Court **DENIES** Spengler's Motion to Bifurcate the Trial (docket no. 48). Spengler asks the Court to bifurcate the trial into liability and damages phases. He claims that he will be prejudiced on the issue of WC's liability if information about his background that he says pertains to mitigation of damages—including his educational background and the fact that he was a white-collar professional for much of his life—is intermingled with evidence on liability. This argument is not well taken. The Court expects that information about Spengler's background is just as likely to come into play in a liability phase, as in a damages phase.

Second, Spengler contends that bifurcating the trial of liability and damages will conserve judicial and litigant resources because there is no point to the jury hearing evidence about damages, if they determine that WC has not violated the law. This argument has slightly more appeal, but as

WC argues in its opposition, bifurcation is appropriate only in limited circumstances. This case does not involve any complex damages determinations and it seems unlikely that it will take very long for the parties to present evidence on damages. Bifurcation is therefore unnecessary here.

For the foregoing reasons, the Court **DENIES** all the motions in limine brought by each party.

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: December 4, 2007**